UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| USAA LIFE INSURANCE COMPANY | CIVIL ACTION |
| VERSUS | |
| | NO. 3:19-CV-259-JWD-EWD |
| RICHARD L. POURCIAU, JR. ET AL | |

**RULING AND ORDER**

This matter comes before the Court on a *Motion for Summary Judgment* (Doc. 43) filed by Defendants Jeffre Pourciau ("Jeffre"), individually and as trustee for the Pourciau Family Irrevocable Trust ("Pourciau Trust"), and Brent Pourciau ("Brent"). Plaintiff USAA Life Insurance Company ("USAA Life") has filed a response indicating that it takes no position on the motion, other than to object to any award of costs, expenses, or interest as prayed for in the motion against USAA Life individually. (Doc. 49.) Defendant René Pourciau Johnson ("René") has also filed a response indicating that she takes no position on the motion. (Doc. 51.) Defendant Richard Pourciau, Jr. ("Richard Jr.") opposes the motion. (Doc. 52.) Defendants Jeffre and Brent filed a reply brief in support of their motion. (Doc. 56.)[1] Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, the motion is granted.

I.  **Relevant Factual Background**

USAA Life brought this interpleader action to have the Court determine the rightful recipient of the proceeds of an annuity contract payable upon the death of the annuitant, Richard L. Pourciau, Sr. ("Richard Sr."). (Doc. 1.) Jeffre and Brent, the moving defendants, and Richard

---

[1] The reply brief does not address USAA Life's objection to an award against USAA Life for costs, expenses, or interest.

1

Jr., all of whom are Richard Sr.'s sons, dispute who is the rightful beneficiary of the annuity's death benefit.

On March 26, 1999, Richard Sr. and Patricia G. Pourciau ("Patricia") completed an application with USAA Life for an annuity contract, with Richard Sr. as the annuitant. (Statement of Undisputed Material Facts by Jeffre and Brent ("SUMF") 5, Doc. 43-2.)[2] USAA Life issued the annuity contract[3] on April 1, 1999. (SUMF 6.) Under the terms of the contract at the time it was issued, Richard Sr. and Patricia were the annuity's co-owners, (SUMF 9) and Patricia was the designated primary beneficiary of the annuity's death benefit. (SUMF 7.) The annuity contract further designated as contingent beneficiaries three of Richard Sr. and Patricia's children: René, Brent, and Jeffre. (SUMF 8.) Their fourth child, Richard Jr., was not listed as a contingent beneficiary at the time of the annuity contract's issuance. (SUMF 10.)

The "Ownership and Beneficiary Provisions" section of the annuity contract states, in pertinent part:

> **CONTRACT AGREEMENT AND CHANGES**
> * * *
> The contract and the application form the entire agreement between you and the Company.
> Only an officer of the Company has authority to:
> 1) Waive a provision of the contract; or
> 2) Agree with the Owner to changes in the contract.
> Any such waiver of change by an officer must be in writing.
> * * *
> **BENEFICIARY**
> The Beneficiary is the person or persons named in the Application who may be entitled to receive any contract benefits that are provided upon the Owner's or the Annuitant's death. A contingent beneficiary may be named to receive the contract benefits in the event the Beneficiary does not survive the Annuitant. If the Beneficiary dies while receiving annuity payments, any remaining payments due will be paid to the Beneficiary's estate.

---

[2] This fact was admitted by Richard Jr. in his Opposing Statement of Material Facts ("OSMF"). (Doc. 52-1 at 2, ¶ 5.) Unless otherwise indicated, when the Court cites to the SUMF in support of a fact, that fact has been admitted by Richard Jr. in the OSMF.
[3] USAA Life Annuity Contract Number T211543326. (SUMF 2.)

2

> Unless otherwise provided, benefits will be paid as follows:
> (1) If two or more Beneficiaries have been named, all benefits will be paid in equal shares to those living at the time of the Annuitant's death;
> (2) If no Beneficiary survives the Annuitant, payment will be made to the Annuitant's estate.
>
> **CHANGE OF BENEFICIARY**
> The Owner, during the Annuitant's life, may change the Beneficiary. To make a change, we must receive a written request. The change will take effect as of the date the Owner signs the request. If we make any payments before receiving the request to change the Beneficiary, we will receive credit for such payments against our obligations under the contract.

(SUMF 11 (quoting Doc. 1-1 at 18–19).)

On April 1, 2005, Richard Sr. and Patricia executed in authentic form a trust agreement creating the Pourciau Trust. (SUMF 12 (citing Doc. 1-1 at 49–55).) The trust agreement names Richard Sr. and Patricia as settlors and co-trustees of the Pourciau Trust and provides that, in the event that neither of them can serve as trustee, their son Jeffre shall serve as trustee. (SUMF 13; *see also* Doc. 1-1 at 51, Section 6.1)

The annuity authorized Richard Sr. and Patricia, as its owners, to assign the contract. (*See* Doc. 1-1 at 18.) Pursuant to that authority, Richard Sr. and Patricia completed an assignment of contract form for the annuity on June 8, 2005, transferring all rights and incidents of ownership in the annuity contract to the Pourciau Trust. (*See* Doc. 1-1 at 31–34; *see also* SUMF 14.) The form expressly states that "[t]his transfer does not change the beneficiary." (Doc. 1-1 at 31; *see also* SUMF 15.) USAA Life issued an endorsement to the annuity contract confirming the change of ownership to the Pourciau Trust. (Doc. 1-1 at 35–43; *see also* SUMF 16.)

Richard Jr.'s Answer and Counterclaim against USAA Life alleges that in August 2007, Richard Sr. and Patricia informed Richard Jr. and his wife that they were changing the primary beneficiary of the annuity from Patricia to Richard Jr. (Doc. 17 at 5.) Richard Jr. claims that when he later logged on to his online USAA account, it showed that he was designated as the

3

primary beneficiary of the annuity. (*Id*. at 5.) According to René's answers to discovery issued in this matter, sometime in 2009, René noticed that this annuity information appeared on her online USAA account as well. (Doc. 52-4 at 4.) Later that year, René changed the annuity's beneficiary to designate her children through her online USAA account. (Doc. 52-4 at 4; *see also* Doc. 17 at 5.) Richard Jr. asserts that, upon learning of the change, he went to his parents' home on December 4, 2009 and showed them where the annuity account showed that Richard Jr. had been replaced by René's children as the named beneficiary. (Doc. 52 at 3; *see also* Doc. 17 at 5.) According to Richard Jr., this upset his parents and prompted Richard Sr. to immediately use the online beneficiary change tool on the screen, which was logged into Richard Jr.'s USAA account, to redesignate Richard Jr. as the annuity's beneficiary. (Doc. 52 at 3; *see also* Doc. 17 at 5.) These allegations are expressly denied by Jeffre and Brent. (*See* Doc. 43-1 at 9; *see also* Reply Statement of Material Facts by Jeffre and Brent ("RSMF"), Doc. 56-1.)

During the Rule 30(b)(6) deposition of USAA Life, Monica Murray testified on USAA Life's behalf regarding the annuity contract at issue. (Murray Dep., Doc. 43-4.) During her testimony, Ms. Murray explained that USAA issues a specific "member number" to every USAA member.[4] (*Id*. at 20–21.) Ms. Murray further explained that, if a member creates an online account with USAA, the USAA-issued "member number" is associated with the online account. (*Id*. at 21.) According to Ms. Murray, USAA's online records reflect that the December 4, 2009 beneficiary change was entered by member number 1401808, which is the number assigned to Richard Jr.'s account. Specifically, when testifying regarding USAA's records of beneficiary information for the annuity contract, Ms. Murray stated: "This is the beneficiary section that was reviewed at the time of claim, when the annuity claim started, and the highlights represent a

---

[4] USAA Life is a wholly owned subsidiary of USAA. (SUMF 1.)

beneficiary change that occurred on December 4, 2009, and it was entered by member number 1401808. And what that represents is that Richard, Jr. made the change." (*Id.* at 25 (referencing Ex. D, Doc. 43-8).) Ms. Murray testified that, aside from the December 4, 2009 change from Richard Jr.'s online USAA account, there had not been any other beneficiary changes on the annuity since it was originally issued in April 1999. (*See* Murray Dep., Doc. 43-4 at 25–26.)

Richard Sr. passed away on December 31, 2017, (SUMF 20) and was predeceased by Patricia. (SUMF 19.) A few months later, USAA Life began receiving competing claims to the annuity's proceeds. In April 2018, Jeffre, as trustee of the Pourciau Trust, submitted a claim for the annuity proceeds, providing copies of Richard Sr.'s death certificate and the Pourciau Trust agreement. (SUMF 21; *see also* Doc. 1-1 at 44–55.) Then, in September 2018, Richard Jr. submitted a claim, asserting that he was the sole beneficiary of the annuity's death benefit and providing a screenshot of an "account summary" for the annuity, dated February 16, 2012, which lists Richard Jr. as the primary beneficiary and trustee. (SUMF 22; *see also* Doc. 1-1 at 56–60.) In response to these competing claims, USAA Life filed this interpleader action, naming the Pourciau Trust and each of the four children as defendants. (Doc. 1.)

## II.    Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.' " *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S. Ct. 1348 (1986) (internal citations omitted). The non-mover's burden is

5

not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations and internal quotations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. Further:

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.

*Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

### III. Discussion

#### A. Parties' Arguments

##### 1. *Jeffre and Brent's Original Memorandum (Doc. 43-1)*

In support of their motion for summary judgment, Jeffre and Brent argue that there is no genuine issue of material fact as to the clear and explicit terms of the annuity contract, which unambiguously provide that they (along with René) are the designated beneficiaries. (Doc. 43-1 at 6–8.) Consequently, Jeffre and Brent maintain they are entitled to judgment declaring their entitlement to their respective shares of the death benefit payable under the annuity as a matter of law. Jeffre and Brent also contend that Richard Jr.'s counterclaim allegations are insufficient to defeat their motion because the purported December 4, 2009 beneficiary change entered online from Richard Jr.'s USAA account was unauthorized and invalid according to the clear provisions of the annuity contract. (*Id*. at 9–12.)

##### 2. *Richard Jr.'s Opposition (Doc. 52)*

6

In opposition, Richard Jr. argues that the motion should be denied because there is a disputed issue of material fact as to whether the annuity's beneficiary designation was validly changed on December 4, 2009, such that he is entitled to 100% of the death benefit. In support of his position, Richard Jr. primarily relies on his declaration, in which he recounts the three alleged beneficiary changes since the annuity's issuance. (Declaration of Defendant Richard Pourciau, Jr. ("Decl."), Doc. 52-2.) Richard Jr. claims that he has presented evidence demonstrating that the December 4, 2009 beneficiary change was properly made by Richard Sr., whereas Jeffre and Brent rely on USAA Life's corporate deposition testimony that Richard Jr. improperly changed the beneficiary because the change originated from Richard Jr.'s online USAA account. (Doc. 52 at 1–2.) Richard Jr. asserts that the parties' disagreement as to who performed the December 4, 2009 beneficiary change request presents a genuine issue for trial that involves weighing the evidence and witness credibility. (*Id*. at 2.)

### 3. *Jeffre and Brent's Reply (Doc. 56)*

In response, Jeffre and Brent argue that Richard Jr. failed to satisfy his burden of going beyond the pleadings by designating specific facts in the record showing that there is a genuine issue for trial. (Doc. 56 at 3.) Much of Jeffre and Brent's reply brief is devoted to articulating their objections to the Declaration of Richard Jr. (*See* RSMF, Doc. 56-1; Doc. 56 at 2.)[5]

### B. Applicable Law

As set forth by the Fifth Circuit, "[t]he interpretation of a contract . . . is a question of law[.]" *McLane Foodservice, Inc. v. Table Rock Rest., L.L.C.*, 736 F.3d 375, 377 (5th Cir. 2013).

---

[5] The Reply Statement of Material Facts (Doc. 56-1) filed with Jeffre and Brent's reply brief includes requests to strike certain paragraphs of Richard Jr.'s Opposing Statement of Material Facts (Doc. 52-1 at 6–7) that rely on the Declaration of Defendant Richard Pourciau, Jr. (Decl., Doc. 52-2.) As will be explained below, the Court does not rely on the Declaration of Richard Jr. in ruling on this motion; accordingly, Jeffre and Brent's requests to strike are moot.

Further, the Fifth Circuit has also concluded that "[t]he ambiguity of a contract is a legal question." *Dore Energy Corp. v. Prospective Inv. & Trading Co.*, 570 F.3d 219, 225 (5th Cir. 2009) (citing *Sims v. Mulhearn Funeral Home, Inc.*, 956 So.2d 583, 590 (La. 2007)). Therefore, "[i]f the answer to the legal question of ambiguity is in the negative, then interpreting that unambiguous contract is also a legal issue for the court." *Id.* (citing *Tex. E. Transmission Corp. v. Amerada Hess Corp.*, 145 F.3d 737, 741 (5th Cir. 1998)).

Under Louisiana law, "[c]ontracts have the effect of law for the parties[.]" La. Civ. Code art. 1983. "Interpretation of a contract is the determination of the common intent of the parties." La. Civ. Code art. 2045. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046. "Under this Article, when a clause in a contract is clear and unambiguous, the letter of that clause should not be disregarded under pretext of pursuing its spirit." *Id.*, cmt. (b) (citing *Maloney v. Oak Builders, Inc.*, 256 La. 85, 235 So.2d 386 (La. 1970)). "The words of a contract must be given their generally prevailing meaning." La. Civ. Code art. 2047. "Words of art and technical terms must be given their technical meaning when the contract involves a technical matter." *Id.* "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La. Civ. Code art. 2050.

### C. Analysis

Here, the undisputed facts support Jeffre and Brent's interpretation of the annuity contract, as set forth in their original memorandum. (*See* Doc. 43-1 at 6–8.) The contract identifies Richard Sr. as the annuitant and Patricia as the primary beneficiary. (SUMF 5–7; Doc. 1-1 at 1.) The contract further identifies Jeffre, Brent, and René as the contingent beneficiaries.

8

(SUMF 8; Doc. 1-1 at 1–2.) The "Beneficiary" provision of the contract provides that "[a] contingent beneficiary may be named to receive the contract benefits in the event the Beneficiary does not survive the Annuitant." (SUMF 11; Doc. 1-1 at 18.) Regarding payment of benefits, the provision states that "[i]f two or more Beneficiaries have been named, all benefits will be paid in equal shares to those living at the time of the Annuitant's death[.]" (Doc. 1-1 at 18.) Patricia predeceased Richard Sr., (SUMF 19) leaving Jeffre, Brent, and René as the remaining beneficiaries. The contract does not identify Richard Jr. as a beneficiary, contingent or otherwise. (SUMF 10; Doc. 1-1 at 1–2.) Importantly, Richard Jr. concedes to these facts. (*See* OSMF, 5–11.) The Court finds that the terms of the annuity contract are clear and unambiguous, and Richard Jr. apparently does not seriously dispute this. (*See* OSMF; Doc. 52.) Thus, viewing the plain terms of the contract as a whole, it is clear that the intended beneficiaries of the annuity were Jeffre, Brent, and René; accordingly, they are entitled to their respective equal shares of the death benefit proceeds.

     Richard Jr. seeks to avoid this result by arguing that there remains a genuine issue for trial. Specifically, Richard Jr. maintains that he has presented evidence regarding the validity of the purported December 4, 2009 online beneficiary change, such that a reasonable jury could find in his favor, thereby precluding summary judgment. (Doc. 52 at 4.) Consequently, the key question in this motion to determine which of the parties are entitled to the annuity's proceeds is whether the online beneficiary change request submitted on December 4, 2009 was valid under the unambiguous terms of the contract. In short, the Court finds that it was not.

     First, the parties do not dispute that the annuity contract identifies the Pourciau Trust as the owner. (SUMF 16.) Nor do they dispute that Richard Sr. and Patricia, as trustees, were the persons authorized to exercise all rights and duties of the owner of the annuity contract with

9

USAA Life. (*See* Doc. 1-1 at 32–35.) The annuity expressly provides for changes to the contract. Regarding contract changes generally, the annuity states that "[o]nly an officer of the Company has authority" to "[w]aive a provision of the contract" or "[a]gree with the Owner to changes in the contract," and "[a]ny such waiver or change by an officer must be in writing." (*Id*. at 18.) Additionally, regarding beneficiary changes, the annuity provides that, to make a change, USAA "must receive a written request," signed by the owner. (*Id*. at 19.)

During the Rule 30(b)(6) deposition of USAA Life, Ms. Murray confirmed that a company officer has neither waived any provision of the annuity contract nor agreed to any changes with the owner, other than the transfer of ownership to the Pourciau Trust that occurred in 2005. (Murray Dep., Doc. 43-4 at 13.) Similarly, Ms. Murray testified that USAA did not receive any documentation regarding a beneficiary change from Richard Sr. (*Id*. at 88–89.) Indeed, according to Ms. Murray's testimony, USAA has no record that the beneficiary was changed in accordance with the terms of the annuity contract since it was issued in 1999. (*Id*. at 68–70.) Ms. Murray also testified that, had a proper beneficiary change occurred, USAA would have issued a document confirming the change, similar to when USAA issued the endorsement confirming the change of ownership to the Pourciau Trust. (*Id*. at 72.)

In his opposition, Richard Jr. suggests that the December 4, 2009 change was made in accordance with the contract, despite the undisputed fact that the transaction was entered on his online USAA account, since Jeffre and Brent "have not pointed to any provision of the contract that precludes an owner from changing the beneficiary of his own policy while logged into his son's account." (Doc. 52 at 5.) The Court finds this contention to be unpersuasive, however, considering USAA's Online Agreement, which all USAA members agree to when accessing

10

their online accounts. (*See* Murray Dep., Doc. 43-4 at 91.) The Online Agreement includes a provision, entitled "Delegated Site Access," which provides, in part:

> If you authorize another person to act on your behalf through a valid Power of Attorney or other delegation acceptable to USAA, we may grant that person Site access to view information and conduct transactions within your accounts until you notify us that you have revoked these access rights . . . . If you access this Site on behalf of another person, you represent and warrant that the authorization of Power of Attorney is currently in force and authorizes the activity you conduct at this Site.

(Doc. 43-9 at 3; *see also* Murray Dep., Doc. 43-4 at 58–59 (referencing Online Agreement).)

During the Rule 30(b)(6) deposition of USAA Life, Ms. Murray confirmed that no power of attorney was submitted for Richard Sr.'s USAA account or the Pourciau Trust's USAA account established for the annuity. (Murray Dep., Doc. 43-4 at 60–61.) Ms. Murray further testified that USAA did not grant Richard Jr. access to view and submit requests on the annuity through his online account. (*Id*. at 92–93; *see also id*. at 29–30.) Rather, according to Ms. Murray, the USAA representative who handled the ownership transfer erroneously entered Richard Jr., rather than Richard Sr., as a trustee of the Pourciau Trust, which then gave Richard Jr. the ability to access the annuity online. (*Id*. at 91–93.) In response to further questioning regarding USAA's entry error, Ms. Murray stated: "USAA provided the error of granting access; however, Richard, Jr. made changes outside of the online agreement statements; so he violated the online agreement that USAA provided when you access USAA.com accounts." (*Id*. at 93.) In short, Ms. Murray testified that USAA does not recognize Richard Jr. as the 100% beneficiary pursuant to the terms of the contract. (*Id*. at 68–69.)

Under the terms of the annuity, Richard Sr., as trustee of the Pourciau Trust, had the power to change the annuity's beneficiaries for years prior to his death in accordance the procedure provided for in the contract. He did not do so, however. Nevertheless, Richard Jr. attempts to defeat summary judgment by relying on limited evidence, namely his own

declaration, which he claims supports his version of events surrounding the December 4, 2009 beneficiary change. But ultimately, such evidence does not override the clear and unambiguous terms of the annuity contract. Moreover, even if the Court were to consider Richard Jr.'s declaration as admissible summary judgment evidence, the Court still finds that, drawing all inferences in Richard Jr.'s favor, a reasonable jury could not find from those few statements that the December 4, 2009 online transaction met the requirements necessary to effect a valid change by Richard Sr., and thereby invalidate the clear beneficiary designation of Jeffre, Brent, and René in the annuity contract. In sum, contrary to Richard Jr.'s assertions, no genuine issue of material fact remains concerning the proper beneficiaries under the contract. As a result, the Court finds that Jeffre and Brent are entitled to their respective shares of the death benefit payable under the annuity as a matter of law.

### IV.  Conclusion

Accordingly,

**IT IS ORDERED** that the *Motion for Summary Judgment* (Doc. 43) filed by Defendants Jeffre Pourciau, individually and as trustee for the Pourciau Family Irrevocable Trust, and Brent Pourciau is **GRANTED**;

**IT IS FURTHER ORDERED** that Jeffre Pourciau and Brent Pourciau are beneficiaries to USAA Life Annuity Contract Number T211543326, and that they are entitled to receive their respective one-third share of the death benefit payable under USAA Life Annuity Contract Number T211543326, plus pre- and post-judgment interest;[6]

---

[6] Jeffre Pourciau and Brent Pourciau's motion requests pre- and post-judgment interest. (Doc. 43 at 2.) Jeffre Pourciau and Brent Pourciau are entitled to recover pre-judgment interest pursuant to La. Civ. Code art. 2000. Further, in accordance with 28 U.S.C. § 1961, Jeffre Pourciau and Brent Pourciau are allowed post-judgment interest.

**IT IS FURTHER ORDERED** that Defendants Jeffre Pourciau and Brent Pourciau's requests to strike the statements of fact in Defendant Richard Pourciau Jr.'s Opposing Statement of Material Facts (Doc. 52-1 at 6–7) are **DENIED AS MOOT**.

Defendants Jeffre Pourciau and Brent Pourciau are further instructed to file any motion claiming attorney's fees and related expenses within fourteen (14) days after entry of judgment.[7]

Signed in Baton Rouge, Louisiana, on January 13, 2022.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[7] *See* Fed. R. Civ. P. 54(d).